HARWOOD *v.* HUNT.

1. WITNESSES — TESTIMONY AS TO MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—WAIVER.

In a suit by the administrator of a father's estate for the cancellation of a deed and a bill of sale of certain personal property to the daughter, where testimony by defendant as to matters equally within the knowledge of the deceased was received without objection, the protec-

As to the effect of the delivery of a deed to grantee, subject to a future extrinsic condition, see note in 16 L. R. A. (N. S.) 941.

tion of the statute (3 Comp. Laws 1915, § 12553) if applicable, was waived.

2. DEEDS—DELIVERY—EVIDENCE—SUFFICIENCY.

   In a suit for the cancellation of a deed not placed of record until after the grantor's death, a finding by the court below that there was no delivery, *held*, sustained by the record.

Appeal from Oceana; Vanderwerp (John), J.   Submitted October 17, 1922.   (Docket No. 108.)   Decided December 29, 1922.

Bill by I. C. Harwood, administrator of the estate of Orson F. Wickham, deceased, against Abbie I. Hunt for the cancellation of certain conveyances of real and personal property.   From a decree for plaintiff, defendant appeals.   Affirmed.

*F. E. Wetmore,* for plaintiff.

*John G. Anderson,* for defendant.

CLARK, J.   Orson F. Wickham, a bookkeeper in the Sand's Bank at Pentwater on November 1, 1918, made and executed a deed of his house and lot in that village and signed a bill of sale of his household goods and some other personal property.   The acknowledgment was taken by Eugene W. Shober, another employee in the bank.   Mr. Wickham's daughter, Abbie I. Hunt, was named as grantee in the deed and as vendee in the bill of sale.   His wife died October 15, 1918, and the daughter, leaving her home in Massachusetts, remained with the father from that date until April, 1919, when she returned to her home, remaining there until June, 1920, when she and her husband moved to Pentwater and lived with the father in his home until his death, August 25, 1920.   Mrs. Hunt caused the deed to be recorded soon after the father's death. The administrator of his estate, claiming that there

were not sufficient assets to pay creditors, filed this bill to set aside the deed and the bill of sale alleging that there had been no delivery. Plaintiff had decree. Defendant has appealed. The only question presented is that of delivery. Plaintiff had testimony by Mr. Shober:

"I can't really say what was done with that deed after I witnessed and acknowledged it.

"*Q.* Was Mrs. Hunt there?

"*A.* Not that I remember; no, sir.

"*Q.* Did you ever see any delivery of this deed to Mrs. Hunt? * * *

"*A.* I did not, that I remember.

"I next saw the deed after Mr. Wickham's death, when I handed the papers to Mrs. Hunt. * * *

"Mr. Wickham told me,—he had these papers in an envelope and he showed me where he put them in the safe and he said: 'If anything happens to me, these belong to Mrs. Hunt—these papers in here' and, of course, when I handed this envelope to Mrs. Hunt this deed was in it. There was a bill of sale of some personal property. I handed these papers to Mrs. Hunt within a week after Mr. Wickham's death. * * *

"I do not know what Mr. Wickham did with those that day. I do not know whether he took them out of the office or not. I do not know whether he delivered them to Mrs. Hunt that day. * * *

"*Q.* They were in an envelope marked something like this, 'The Personal Papers of Abbie I. Hunt,' weren't they?

"*A.* 'Personal Papers of O. F. Wickham for Abbie I. Hunt,' I think was the way it was marked. * * *

"He didn't show me the contents, he just said, 'I am putting this envelope here,' and showed me where he put it in the corner of the safe. He said: 'If anything happens to me these belong to Abbie.'

"*Q.* You don't know whether that deed was there or not?

"*A.* I do not.

"*Q.* You don't know whether Mrs. Hunt put it there or not, as a matter of fact, do you?

"*A.* I don't know."

With this testimony the plaintiff rested.

Defendant gave the following testimony without objection:

"After his death I went to the office to get this deed.

"*Q.* Where did you find the deed?

"*A.* The deed was in the safe contained in the large vault in Mr. Sand's office where my father had worked.

"*Q.* Who put it there?

"*A.* I did.

"*Q.* When did you put it there?

"*A.* I put it there the afternoon of November 1, 1918.

"*Q.* Who was present when you put it there?

"*A.* Miss Olive Christiansen was present in the office at that time.

"*Q.* This bill of sale that has been spoken of here, who owned that personal property?

"*A.* My mother did.

"*Q.* It was your mother's at the time of her death, was it?

"*A.* Yes, sir.   *   *   *

"*Q.* Did you, yourself, put the deed in the vault?

"*A.* I did.

"*Q.* What did you put it in?

"*A.* I put it in a large manilla envelope containing my own personal papers.

"*Q.* And were there any other papers belonging to you, there?

"*A.* Yes, sir.

"*Q.* I will ask you whether or not you kept some of your private papers in that place.

"*A.* I did.

"*Q.* And had you for some time?

"*A.* I have.

"*Q.* I will ask you in relation to the bill of sale that has been spoken of,—who put that in the—

"*A.* I did.

"*Q.* When?

"*A.* November 1, 1919."

Defendant's husband testified that the father had often written to defendant urging her to move to Pentwater, saying: "The place is yours and I need you."

The letters were not produced. It also appears that after defendant's coming to live with her father in June, 1920, she and her husband kept their private papers with those of the father in the bank and that Mr. Hunt had access to the vault. Mr. Hunt testified: "The papers were all together, Mr. Wickham's and Abbie's and mine all were in there, with a rubber band around them." Mr. Shober and Miss Christiansen had no recollection of seeing defendant in the bank November 1, 1918.

As regards the testimony of defendant, received without objection, the estate can have no benefit of section 12553, 3 Comp. Laws 1915, prohibiting an opposite party testifying to matters equally within the knowledge of a deceased person. The testimony was received without objections, so the protection of the statute, if applicable, was waived. See *Newton* v. *Freeman*, 213 Mich. 673.

Defendant claims delivery on November 1, 1918, the day the papers were made, and that she then placed such papers in the bank vault in a manilla envelope containing her private papers. All the other evidence in the case indicates that neither she nor her husband kept any papers at the bank before June, 1920. Mr. Shober's testimony is to the effect that the envelope containing the papers which he gave to defendant after Mr. Wickham's death was the same one that Mr. Wickham had placed in the vault when he said, "If anything happens to me these belong to Mrs. Hunt— these papers in here." His testimony that the envelope was indorsed "Personal Papers of O. F. Wickham for Abbie I. Hunt" was not specifically denied. And defendant did not produce the envelope. That Shober did not know what may have been done with the papers in the meantime has no great significance for defendant claims delivery on November 1st and does not claim to have had the papers actually in

possession from November 1, 1918, until about August 31, 1920, nor that they were out of the bank or otherwise disturbed during that time. Neither Mr. Shober nor Miss Christiansen had any recollection of defendant's coming to the bank on the day in question. And there is no explanation or reason given by defendant for her claimed leaving the deed, unrecorded, in the bank until after her father's death. Nor for its being left there for upwards of a year while she lived in another State. Doubtless it was the father's desire that his daughter should have the home, but, as we said in *Clay* v. *Layton*, 134 Mich. 317, to give effect to that desire we may not override established rules and principles essential to the protection of the rights of heirs. The trial judge had the advantage of seeing the witnesses and hearing their testimony. We are not persuaded that he was wrong in holding that there had been no delivery. See *Clay* v. *Layton, supra; Reason* v. *Jones*, 119 Mich. 672.

The decree is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.