*In re* MOORE'S ESTATE.

CLAIM OF ERB.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ENLARGEMENT OF CLAIM ON APPEAL FROM PROBATE COURT.

Alleged impropriety of enlarging claim against an estate in circuit court on appeal from probate court by adding common counts to claim based on express contract is not discussed where claim in Supreme Court is based upon the express contract.

2. MORTGAGES—FORECLOSURE BY ADVERTISEMENT—DEFICIENCY—AC-
TION AT LAW.

An action at law may be instituted for deficiency on statutory
foreclosure of a mortgage securing a promissory note.

3. ABATEMENT AND REVIVAL—ACTION AGAINST ATTORNEY BASED ON
EXPRESS CONTRACT SURVIVES HIS DEATH.

While an action for negligence or malpractice of an attorney does
not survive under the common law or by virtue of survival
statute, an action against estate of attorney based upon claimed
breach of an express contract to look after plaintiffs' interests
in a mortgage moratorium suit and secure a release of all
claims and surrender of all obligations of the mortgagee does
survive (3 Comp. Laws 1929, § 14040).

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PREJUDICIAL ARGU-
MENT OF COUNSEL—SAVING QUESTION FOR REVIEW.

Supreme Court will not consider matter of alleged prejudicial
error in long argument of plaintiffs' counsel to jury in his
opening statement where no objection thereto was made to
trial court.

5. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
—TESTIMONY OF WHAT ANOTHER PERSON SAID TO DECEASED.

Testimony of claimant for damages for breach of deceased at-
torney's express contract to look after claimant's interest in
a mortgage moratorium suit as to what another attorney had
said to the deceased at time alleged settlement transaction was
closed was improper since it was evidence which was equally
within knowledge of deceased (3 Comp. Laws 1929, § 14219).

6. RELEASE—PAROL RELEASE FROM ALL LIABILITY UNDER MORTGAGE
OF APARTMENT HOUSE, FIXTURES AND FURNISHINGS.

Validity of release of mortgagors from all liability under mort-
gage of their apartment house and fixtures and furnishings was
not affected because it rested in parol, though the absence of a
memorandum might make it difficult to prove.

7. ATTORNEY AND CLIENT—BREACH OF CONTRACT FOR SERVICES—EX-
CESSIVE VERDICT.

Jury's verdict for plaintiff of $5,350 in former client's action
against estate of attorney for breach of alleged contract to
look after plaintiffs' interests in mortgage moratorium suit
*held*, against the great weight of the testimony and excessive,
under testimony of plaintiff that he had paid $4,573.98 with
interest and costs but cross-examination disclosed he had paid

no money and had conveyed an eight-foot strip of land adjacent to lot mortgaged and upon which apartment house protruded and had received a smaller wedge-shaped tract, it is an undisputed fact that when mortgage was given it was the intention of the parties to cover the entire apartment building and not all but eight feet of it, and other testimony shows that eight feet conveyed was of little value.

8. REFORMATION OF INSTRUMENTS—MISTAKE—DESCRIPTION OF PREMISES—INTENT—VISUAL STANDARD.

A deed or mortgage of real estate may be reformed where, through error, it fails to express the result of the meeting of the minds of the parties, particularly when it is clear that the description fails to embody the clear, undisputed visual standard of the parties.

9. ATTORNEY AND CLIENT—DAMAGES—MORTGAGES—MISDESCRIPTION.

Mortgagors who settled action for deficiency by conveying an eight-foot strip of land on which mortgaged apartment house protruded gave up nothing they were entitled to retain where mortgage was intended to cover entire apartment house although description of tract conveyed was not quite all of land occupied by the building, hence such conveyance was not a proper item of damages in mortgagors' action against estate of former attorney on his express contract to take care of their interests in settlement of mortgage moratorium suit.

Appeal from Oakland; Hartrick (George B.), J. Submitted October 13, 1939. (Docket No. 37, Calendar No. 40,667.) Decided February 14, 1940.

In the matter of the estate of Andrew L. Moore, deceased. Charles F. Erb and wife presented their claim in the probate court for damages for alleged negligence in the practice of law. From denial of claim in the probate court, claimants appealed to circuit court. Verdict and judgment for plaintiffs. Defendant estate appeals. Reversed and new trial ordered.

*Walter M. Nelson*, for plaintiffs.

*William H. Wilmot* (*Robert D. Heitsch,* of counsel), for defendant estate.

BUTZEL, J.   Plaintiffs, Charles F. Erb and Minnie A. Erb, of Pontiac, Michigan, presented a claim for damages against the estate of Andrew L. Moore.   In substance, they allege that they retained Mr. Moore, an attorney of Pontiac, to represent them as co-counsel in a pending mortgage moratorium suit; that the plaintiffs, who were mortgagors of an apartment building in Pontiac on which the mortgage had been foreclosed, made a settlement with the New York Life Insurance Company, mortgagee, whereby the latter was to receive a surrender of the equity of redemption and a bill of sale of furnishings used on the premises for the sum of $1,500 and a release of all obligations; that Moore undertook and agreed to draft the proper documents of settlement and release of plaintiffs as mortgagors from any deficiency due the mortgagee; that Moore was negligent in performing the duties and services he was retained to perform and breached his contract to protect the claimants, and as a result thereof the liability for the deficiency was not discharged.   They further claim that by reason of the neglect and breach of contract of Mr. Moore, a deficiency judgment for $4,573.98 and costs was rendered against plaintiffs (*New York Life Ins. Co.* v. *Erb,* 276 Mich. 610), and that they were damaged in the amount of $5,292.30. Plaintiffs' claim was denied by the commissioners on claims, and an appeal was taken to the circuit court where they filed a claim in the form of a declaration. In the circuit court the common counts were added to the declaration.   As plaintiffs base their claim on an express contract and not on the common counts, we need not discuss the alleged impropriety of en-

larging the claim on appeal from that filed in the probate court.

At the trial in the circuit court, Mr. Erb testified that he and his wife had been the owners of lot No. 29 of a subdivision fronting on State street in the city of Pontiac, Michigan, on which they built a 32-family apartment building. They mortgaged it to the New York Life Insurance Company for $55,000, and executed a second mortgage to another mortgagee for $66,000 or $67,000. The mortgage to the New York Life Insurance Company, which was introduced as an exhibit, shows that it included all the fixtures and articles of personalty attached to or used on the premises. It also contained a warranty of title and a provision that the mortgagors would execute any further assurance of the title to the property requested by the mortgagee. On April 18, 1934, when plaintiffs' equity of redemption was about to expire, they retained a Mr. Hampton, a local attorney, to file a bill for a moratorium in the Oakland county circuit court. A motion was made for the determination by the court of the fair rental value of the property to be paid during the period of moratorium. In preparing the case for hearing, Mr. Erb and his attorney decided to employ the late Andrew L. Moore as additional counsel, and the latter did appear as counsel at the hearing. The court fixed the fair rental value of $500 per month, conditioning the moratorium on payment of that sum on the 18th of June, 1934, and on the same date of each succeeding month for the period of the moratorium.

Mr. Erb testified that he did not immediately leave the court house after the case was heard, but went into one of the rooms outside the courtroom with his attorney and the attorney for the life insurance company to discuss the possibility of a settlement of the moratorium suit. Mr. Moore was not present, nor

was he present that afternoon when Mr. Erb and Mr. Carey, attorney for the life insurance company, went to the apartment building. On cross examination Mr. Erb stated:

"Following the suggestion that we might get together, Mr. Carey and I went up to the apartment. While we were there we discussed terms and conditions that might be met in the way of settlement and I think it is true that while he was up there he went over the books to determine how much rent we had collected since the date on which the bill of complaint had been filed. He also looked over the furniture, more or less casually, and the inventory. Mr. Carey and I arrived at an agreement. That agreement was subject to Mr. Carey securing authority to carry that agreement out from his client, the New York Life Insurance Company. At no time during all that process was Mr. Moore or Mr. Hampton anywhere around. The agreement that Mr. Carey and I arrived at was the beginning of our negotiations. I don't recall that I saw Mr. Hampton and Mr. Moore together at any time from the 28th day of May, 1934, until the agreement was signed on the 31st, but I seen them both. I believe Mr. Hampton called me and told me Mr. Carey was coming out to close the deal on the 31st. When I got to Mr. Hampton's office on the 31st, Mr. Hampton and Mr. Carey were there and Mr. Moore was called in later on."

The agreement arrived at on the day of the moratorium hearing was subject to confirmation by the life insurance company. Mr. Carey testified that the next day he was authorized to conclude the settlement as arrived at with Mr. Erb.

Without objection Mr. Erb was permitted to testify on direct examination that after the settlement was approved by the life insurance company, he and the attorney for the life insurance company met at the office of Mr. Hampton; that Mr. Moore also at-

tended the meeting; that Mr. Hampton stated to
Mr. Moore that they had come to complete the negoti-
ations for the deal between Erb and the insurance
company, and that:

"The Erbs was surrendering their moratorium on
the building, selling to the New York Life Insurance
Company all of their furniture in the apartments,
that the New York Life Insurance Company was sur-
rendering to Erb, *bona fide* surrender of all obli-
gations and Erbs was surrendering all of their hold-
ings and rights to the moratorium, in substance—
"The New York Life Insurance Company was to
pay the Erbs $1,500 for the furniture in their apart-
ment building. Out of that they were to retain $500
for the current month's rent or thereabouts as fixed
by the court for a fair rental value. In substance,
that was the talk. When that statement was made
the papers laid there on Mr. Hampton's desk. Mr.
Moore looked over the papers, of course, and said
to me, 'Well, here is what we sign up.' He and
Mr. Hampton, I believe, he did anyway, signed the
stipulation of discontinuance and told me where I
was to sign and what I was to sign."

At this meeting they executed a bill of sale for the
personalty in the building or used in connection
therewith, except such as belonged to the tenants or
the apartment of the Erbs, a quitclaim deed of the
premises, and a stipulation discontinuing the mora-
torium suit. The sum of $1,500 was paid to the Erbs
for the furniture, but before the insurance company
would conclude negotiations, Erb was forced to
credit $500 he had collected as rentals. Although all
the terms of the deal were not reduced to writing,
Mr. Erb's testimony indicates that the negotiations
resulted in an oral accord and satisfaction which
included a release of the obligations of the Erbs. He
claims that Mr. Moore's failure to secure a written

release or surrender of the mortgage note was a breach of his contract.

It appears that the mortgage in the first instance covered the furniture and fixtures attached to or used in connection with the premises, but they were sold through a delinquent tax sale to a third party, from whom the C. F. Erb Construction Company acquired title. Mr. and Mrs. Erb signed the bill of sale as president and secretary, respectively, of the company, and as individuals.

At the time construction of the apartment building was begun, Erb had lot No. 29, the site of the proposed building, surveyed. He testified that he did not know whether the insurance company had it surveyed or he had it surveyed for it at the time the mortgage was negotiated, but the company had taken Erb's survey. It is not clear just when he found out from another survey that the apartment house protruded some eight feet over on lot No. 28, adjoining property belonging to the Erbs and not covered by the mortgage description. Erb's application for the mortgage stated the dimensions of the ground as 60 x 157 feet and 50 x 157 as the dimensions of the building. The question of the overlapping of the building was not raised at the time of the settlement of the moratorium suit.

The attorney for the mortgagee testified that when the mistake was claimed by Erb, he considered the possibility of two remedies, either to file a bill in equity to reform the description or to sue the Erbs for a deficiency on foreclosure of the mortgage and levy upon the property. The mortgagee chose the latter and brought suit to recover a deficiency judgment on the ground that while the bid for the property at foreclosure sale satisfied the principal and interest of the mortgage, it did not cover the taxes which the company paid after the beginning of the

foreclosure advertisement but before the sale. The defense there asserted was that a suit at law would not lie for a deficiency after foreclosure by advertisement, but that a deficiency decree could be obtained only in a chancery foreclosure. We held the mortgagee is entitled to a deficiency judgment after foreclosure by advertisement. *New York Life Insurance Co.* v. *Erb, supra.*

*New York Life Insurance Co.* v. *Erb, supra,* was decided September 2, 1936. About three months later, in December, 1936, prior to the settlement of the judgment therein, Erb filed a petition in bankruptcy. When Erb was pressed for an answer as to whether or not at the time he filed the bankruptcy petition he listed the adjoining property as an asset and thus show he had no interest whatsoever in the property to the west of the home or apartment, he evasively replied that, if he did not, then he did not have any interest in it; finally he did state that the property "was not listed because it was not my individual property," but that it was deeded to Dolly Werthenheimer as security for a loan. The bankruptcy file was not introduced and from the record before us it does not appear whether the New York Life Insurance Company was listed as a creditor or whether Erb received his discharge in bankruptcy. The date of the filing of the petition was not given but it was approximately the time of the settlement of the deficiency suit. The record indicates that shortly after Dolly Werthenheimer received title to lot No. 28 she deeded it back to plaintiffs and they, in turn, deeded to the New York Life Insurance Company the eight feet or thereabouts on which it is claimed the apartment overlapped on lot No. 28, the land owned by plaintiffs. The insurance company, in turn, deeded to plaintiffs a wedge-shaped piece adjoining the property still belonging to plaintiffs

and they also gave a discharge of the deficiency judgment. The piece deeded to plaintiffs tapers down from a width of six feet to a point and is 60 feet in length. Plaintiffs insist that this wedge-shaped piece of property is of little or no value. Following these transactions, the present proceedings were instituted. The jury awarded plaintiffs a verdict of $5,350. Further details will be set forth in the discussion of the questions raised on appeal.

It is claimed in the first instance that this action will not lie because an action for the negligence or malpractice of an attorney does not survive under the common law or by virtue of 3 Comp. Laws 1929, § 14040 (Stat. Ann. § 27.684). While it might be true that at common law, a tort action against an attorney does not survive (*Stebbins* v. *Dean,* 82 Mich. 385; see 70 A. L. R. 122), plaintiffs base their claim on a breach of an express contract to look after their interests properly and to secure a release of all claims and surrender of all obligations to the New York Life Insurance Company. We think an action for breach of such a contract survives. *Knights* v. *Quarles,* 2 Brod. & B. 102 (129 Eng. Rep. 896).

It is next contended that the conduct of counsel in his opening statement constituted prejudicial error. The argument of plaintiffs' counsel was very long and it may have had much to do with the verdict of the jury, possibly even appealing to their prejudices. However, no objection was made to the trial court, and, therefore, we shall not consider the question.

The serious questions in the case are whether the verdict was against the overwhelming weight of the evidence both as to liability and damages, and whether the verdict was excessive. It may well be questioned whether plaintiffs introduced any competent testimony to prove that decedent made the

contract. There is no doubt but that Mr. Moore was retained to assist Mr. Hampton, plaintiffs' counsel, for the hearing in the moratorium proceeding to fix the fair rental value of the apartment building. In an attempt to show that Mr. Moore knew the terms of the settlement, Mr. Erb testified as to what Mr. Hampton, Erb's attorney, had said to Mr. Moore at the time the transaction was closed. We think this was improper within the principles laid down in *Taylor* v. *Bunker*, 68 Mich. 258; *Michels* v. *Underwriters' Association*, 129 Mich. 417; *Finn* v. *Sowders' Estate*, 139 Mich. 623; *Beadle* v. *Anderson*, 158 Mich. 483; *Shepard* v. *Shepard*, 164 Mich. 183; *In re Meeker's Estate*, 169 Mich. 303; *Johnson* v. *Charles' Estate*, 217 Mich. 691; *Shippee* v. *Shippee's Estate*, 255 Mich. 35; 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914). See, also, *Hutton* v. *Smith*, 175 N. Y. 375 (67 N. E. 633). However, the testimony was admitted without objection. There appears to be some conflict in the decisions as to whether or not an administrator is deemed to have waived the disqualification of the witness by failing to make seasonable objection. In *McHugh* v. *Dowd's Estate*, 86 Mich. 412; *Hayes* v. *Skeman*, 269 Mich. 473; *Geisel* v. *Burg*, 283 Mich. 73, and *Thorbahn* v. *Walker's Estate*, 269 Mich. 586, we held that an administrator may not thus waive the statute. A different conclusion under certain circumstances was reached in *Harwood* v. *Hunt*, 221 Mich. 349, and *Adams* v. *Novo Engine Co.*, 264 Mich. 292. As we base the decision on other grounds, we need not discuss the question.

Interpreting the evidence of the contract most favorably to plaintiffs, there is still the question of what damages, if any, are properly attributable to the alleged breach of contract. We appreciate the difficulty a jury might have had in comprehending the relatively complicated facts, even when pre-

sented so ably as plaintiffs' attorney handled the situation. As far as the present record shows, it is difficult to see how Erb could have been damaged through owing the amount of the deficiency judgment when he owed a large amount in addition thereto from which he petitioned a discharge by the bankruptcy court. This, however, is in no sense decisive of the case, but we point it out because it tends to show the weakness of the claim. Moreover, according to Mr. Erb's testimony, previously quoted herein, he and the attorney for the life insurance company reached an oral agreement which included a release of all the mortgage obligations. All the terms of the agreement were not reduced to writing; the only documents were the bill of sale, quitclaim deed, and the stipulation discontinuing the moratorium suit, and these were executed solely to satisfy the requirements of positive rules of law. But nevertheless plaintiffs bargained for and did obtain a release of their obligations according to their own testimony and the finding of the jury. However, the validity of the release was not affected because it rested in parol, though the absence of a memorandum might make it difficult to prove should the occasion arise. In the proceedings in *New York Life Insurance Co.* v. *Erb, supra,* the question of the accord and satisfaction was not raised in the affidavit of merits in opposition to the motion for summary judgment. A summary judgment would not have been rendered had the affidavit of merits stated that there was a release of all obligations or an accord and satisfaction, for such statement would have at least raised a question of fact for trial. Had there been the settlement as plaintiffs claimed, it was their duty to bring the release to the attention of the court in the deficiency suit, and their failure to do so was tantamount to a confession of judgment. This is

pointed out because of the weakening effect on plaintiffs' claim.

The amount of damages found by the jury is against the great weight of the testimony. The verdict was excessive, if plaintiffs were entitled to any recovery at all. Two witnesses for defendant testified that the strip of property deeded to the New York Life Insurance Company for the release was of no value at all. A witness for plaintiffs testified that the sale price in 1925 of all of lot No. 28 was $1,000. He further testified that it would be difficult to say what the entire lot would be worth if the building were not there because values had decreased so much since the property was sold. He further testified that if the building had not been on the lot in December, 1936, the entire lot ought to have been worth at least $800. He stated that a corner lot on State street on which a building stood was worth around $1,000 or $500. On direct examination, Erb, in testifying that he paid the New York Life Insurance Company judgment, stated that he paid $4,573.98 with interest and costs. On cross-examination, however, the facts developed that he did not pay any cash whatsoever, but that he deeded the small abutting strip of land on which the end of the apartment building stood in payment and satisfaction of judgment and that he also received in turn a wedge-shaped piece of property. Mr. Erb felt that the land he conveyed was worth at least three times the amount of the deficiency judgment, but gave no reason for his opinion.

Furthermore, we think plaintiffs turned over to the New York Life Insurance Company what the latter could have forced them to turn over by appropriate proceedings. The jury apparently overlooked entirely the undisputed fact that it was the intention of all parties that the mortgage cover the entire

apartment building and not the building less the eight feet claimed to have been built on the lot not mortgaged to the insurance company. There is no way of telling which survey was correct or on whom might be placed the technical blame for the error. There is abundant authority for reforming a deed or mortgage which, through error, fails to express the result of the meeting of the minds of the parties, particularly when it is clear that the description fails to embody the clear, undisputed visual standard of the parties. See *Schoenfield* v. *Veenboer*, 234 Mich. 147; *Lee State Bank* v. *McElheny*, 227 Mich. 322, and annotation in 73 A. L. R. 612. We think the mortgagee was absolutely to be protected in the peaceful possession of the land purchased on foreclosure sale, including the ground not described in the mortgage on which the building overlapped. In *Waldron* v. *Letson*, 15 N. J. Eq. 126, through error the description in the mortgage failed to cover 30 feet of the building. The court refused to permit the mortgagor to take advantage of the mistake, stating as its reason:

"I rest it upon the broad principle, that where a parcel of land is sold under a decree of foreclosure, and is struck off and conveyed to the purchaser under an erroneous impression that the mortgage covers the entire tract, the price as for the entire tract being bid and paid, and the purchaser put into possession, and it is afterward discovered that, from a mistake in the description, the mortgage does not cover the entire premises intended to be mortgaged, by reason whereof the legal title fails, the purchaser is entitled to be protected in the peaceable possession of land purchased. If the mistake in a mortgage may be corrected, it is just and equitable that the mortgagor should abstain from availing himself of the mistake to the prejudice of the purchaser."

In conveying this strip in satisfaction of the deficiency judgment, plaintiffs gave up nothing they were entitled to retain except the possibility of causing the insurance company the annoyance and expense of a lawsuit.

A careful reading of the record and full consideration thereof brings us to the conclusion that the verdict was against the overwhelming weight of the evidence and for this reason the judgment is reversed, with costs to defendant, and a new trial ordered.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred.