FARABAUGH v. RHODE.

1. EQUITY—HEARING DE NOVO.

Equity cases are heard *de novo* by the Supreme Court.

2. SAME—QUIETING TITLE—REFORMATION OF INSTRUMENTS.

In suit to quiet title to five parcels of land which at one time formed part of a 95.5-acre tract on the east side of Lake Michigan owned by a common grantor who conveyed two parcels of 20 and 5 acres respectively off the northwesterly corner of the south 55.5 acres, and described the two tracts conveyed by metes and bounds, wherein the two defendants gave notice of affirmative defenses asking that plaintiff be denied all relief and that title to triangular parcels between defendants' land and lake and rectangular parcels between defendants' land and nearby east section line be declared to be in them, better practice would have been to have filed cross bills asking reformation of descriptions in various deeds.

3. DEEDS—CONSTRUCTION—AMBIGUITIES.

. While courts will follow the plain language in a deed in which there is no ambiguity, where there is an ambiguity or the deed fails to express the obvious intention of the parties, courts will try to arrive at the intention of the parties and in accordance therewith grant or deny the relief asked for.

4. SAME—CONSTRUCTION.

In case of doubt as to the meaning of an instrument, courts will consider the situation, acts, conduct and dealings of the parties to the instrument and also as to the subject matter.

5. REFORMATION OF INSTRUMENTS—MISTAKE—DEEDS.

A deed which, through error, fails to express the result of the meeting of the minds of the parties may be reformed, particularly when it is clear that the description fails to embody the clear, undisputed visual standard of the parties.

6. DEEDS—DESCRIPTION—METES AND BOUNDS—LAKE FRONT PROPERTY.

Description by metes and bounds in deed to 20 acres off the northwest corner of the south 55½ acres of a 95.5-acre tract

on the east side of Lake Michigan so that only the northwest corner of the parcel described touched the meander line created an ambiguity and when construed with consideration given to value of land at time deed was given and its proximity to a Great Lake, small triangular tract between meander line and parcel described, of little value to anyone except owner of parcel described and not occupied by grantor or her heirs and which was not assessed in her or their names is included in deed.

7. NAVIGABLE WATERS—GREAT LAKE—MEANDER LINE—DESCRIPTION —BOUNDARIES.
   The meander line of a Great Lake is a line of description and not one of boundary.

8. SAME—GREAT LAKE—MEANDER LINE—ACCRETION—RELICTION— INTENT.
   One owning to the meander line of a Great Lake owns to the water's edge subject to accretion and reliction unless a contrary intention is expressed in the conveyance.

9. DEEDS—DESCRIPTION—MEANDER LINE—TRIANGULAR PARCEL.
   Description in deed of 5-acre tract in north part of south 35½ acres of 95.5-acre tract on east side of Lake Michigan beginning at northwest corner and by courses and distances east, south, west, and north along lake to place of beginning indicated an intention to include a small triangular-shaped tract between meander line and rectangular-shaped parcel containing exactly 5 acres.

10. SAME—DESCRIPTION—COURSES AND DISTANCES—NATURAL OBJECTS.
    Courses and distances in descriptions in a deed yield to natural and ascertained objects like the shore of a lake.

11. QUIETING TITLE—QUITCLAIM DEEDS—UNINCLUDED TRACTS IN CONVEYANCES BY DEFENDANTS' GRANTORS—INTENT.
    In suit to quiet title brought by grantee under quitclaim deeds from heirs of title holder of 95.5-acre tract on east side of Lake Michigan, who had conveyed various parcels by ambiguously worded deeds, finding of trial court that plaintiff had title to sliver of land having 5.2 feet frontage on lake, over 1,550 feet long and 34 feet wide at easterly end, as well as two small tracts along easterly portion of larger tract not included within metes and bounds descriptions of other deeds either by express wording or otherwise and common grantor does not appear to have intended to include a very large amount of acreage in excess of what deeds called for was sustained by record.

12. VENDOR AND PURCHASER—FIDUCIARIES—OPTIONS.

> Defendant landowner from whom plaintiff sought to purchase a lake front tract, who obtained through defendant's agent an option, signed by defendant, authorizing plaintiff to bring suit to vacate an unauthorized plat and to bring suit in defendant's name to obtain a way of necessity, did not occupy a fiduciary relationship, where it appears the parties dealt with each other at arms' length.

13. ADVERSE POSSESSION—EVIDENCE.

> Claim of adverse possession by defendants of small tracts of land adjacent to tracts conveyed by defendants' predecessors in title was not substantiated where proofs do not show possession by any one.

14. COSTS—FAILURE OF ANY PARTY TO FULLY PREVAIL.

> On appeal in suit to quiet title where neither party fully prevails, costs are not awarded to anyone.

WIEST, J., dissenting.

Appeal from Berrien; Evans (Fremont), J. Submitted January 7, 1943. (Docket No. 55, Calendar No. 42,196.) Decided May 18, 1943.

Bill by Gallitzen A. Farabaugh against Dorothy Coleman Rhode, William A. Hutchison, Mary A. Hutchison, his wife, and others to quiet title to land. Decree for plaintiff. Defendants appeal. Modified.

*Rolland E. Barr,* for plaintiff.

*Charles W. Gore,* for defendant Dorothy Coleman Rhode.

*Arthur E. Leckner* (*Burns & Hadsell,* of counsel), for William A. and Mary A. Hutchison.

BUTZEL, J. Gallitzen A. Farabaugh brought suit to quiet title to five small parcels of property all situated in the north fractional half of section 13, township 6 south, range 20 west in Lake township, Berrien county, Michigan. Instead of describing the

parcels by metes and bounds, we have marked them for purposes of clarity and brevity "A," "B," "C," "D" and "E" on the plat which was introduced as Exhibit 1 by plaintiff and a rough copy of which is attached to this opinion. There were a large number of defendants in the case all of whom, with the exception of the three appellants, Dorothy Coleman Rhode, William A. Hutchison, and Mary A. Hutchison, were defaulted for nonappearance.

In the original government survey, the acreage of the north fractional half of section 13, township 6 south, range 20 west, in Lake township, Berrien county, Michigan, and including both the northerly 40 acres and the southerly 25½ acres, is shown to be 95.5 acres, the meander line being used as the west boundary and the section line as the east boundary. The strip of land, lying between the government meander line and the shores of Lake Michigan, ranges from 230 to 250 feet in width. In order to properly trace the title, it would be necessary to give the complete abstract as printed in the record from the year 1895, when it is conceded that Kate A. Whitacre became the owner of the fractional half-section. Limitation of space prevents us from doing this and we shall omit all references to such entries in the abstract as do not materially affect the questions in this case.

Plaintiff relies on the abstract, copies of plat, surveys, et cetera, and the testimony of William J. Cleary, an experienced civil engineer, the only witness who appeared at the hearing. He had made a careful survey of the entire tract and made the survey shown by the plat, Exhibit 1, in November, 1938, shortly before the suit was begun. The correctness of the Cleary plat is not questioned. His survey of the entire property disclosed the fact that there were 96.3 acres in the north fractional half of

section 13 hereinbefore described. When Kate A. Whitacre obtained the deed of the entire tract in 1895, the property was described as 95.5 acres instead of 96.3 acres as shown by the Cleary survey. The difference possibly may be accounted for by the small narrow strip marked "A" on the Cleary plat running the entire width of the property.

All parties trace their title back to Kate A. Whitacre who paid the sum of $1,600 for the entire 95.5 acres in 1895 when she took title. In 1897 she gave a warranty deed to Arthur J. Pickering for the property described as follows:

"20 acres off NW corner of S. 55½ acres being S. 55½ acres of Nfrl ½ of sec. 13, twp. 6 S., R. 20 W. 95.5 acres more or less. The above 20 acres to begin at NW corner of a line E. 1221 feet; thence S. 714 feet; thence W. 1221 feet; thence N. 714 feet to place of beginning."

Thus the deed describes by metes and bounds a strip extending 1,221 feet on the northerly and southerly sides and 714 feet on the easterly and westerly sides, the entire description embracing 20 acres off the northwest corner of the southerly 55½ acres. The actual distance from the northwest corner of the south 55½ acres to the east section line is 1,558.25 feet. In the Whitacre-Pickering deed the line runs only 1221 feet east from the northwest corner and then runs south. This leaves a tract 337.25 feet east and west by 714 north and south between the east line of the 20 acres and the easterly section line, parcel "B." Between the west line of the 20 acres and the meander line of Lake Michigan is another comparatively small piece of property, triangular in shape with an altitude of 714 feet and a base of 191.1 feet wide, parcel "D." The issue as to defendant Rhode's title to the Coleman

tract is whether the property east and west of the metes and bounds description, parcels "B" and "D," were conveyed to Pickering through whom Mrs. Rhode traces title by mesne conveyances or whether it was retained by Mrs. Whitacre through whose heirs plaintiff derives title. The same issue is presented as to the title to the Hutchison tract, involving parcels "C" and "E," except that the deed of the original grantor dated May 10, 1899, described the property as follows:

"5 acres north part south 35½ acres * * * beginning at northwest corner said 35½ acres; east 80 rods; south 10 rods; west 80 rods; north 10 rods along lake to place of beginning."

In plaintiff's bill he claimed title to parcels "A," "B," "C," "D," and "E" through deeds from the heirs of Kate A. Whitacre and of William H. English, who was a brother of Mrs. Whitacre and also a grantee of part of the land. Defendant Dorothy Coleman Rhode filed an answer and also gave notice of an affirmative defense in which she asks that plaintiff be denied all relief and that the title to parcels "B" and "D" east and west of the parcel marked "Coleman" on the plat be declared to be in her. Defendants Hutchison in their answer ask that plaintiff be denied all relief, and that the title be quieted in them to the parcels east and west of the tract marked "Hutchison" on Exhibit 1.

The trial judge closely examined the abstract and Mr. Cleary's testimony and in a very carefully considered opinion held that since the property was described by metes and bounds and the amount of acreage was stated he was bound by the record title.

This is an equity case which we hear *de novo*. It would have been better practice had the defendants respectively filed cross bills asking reformation of

the descriptions in the various deeds. However, the issues and evidence would have been practically the same as presented on this record, and we would come to the same conclusions had such cross bills been filed.

The general rule is that courts will follow the plain language in a deed in which there is no ambiguity. If, however, there is an ambiguity, or if the deeds fail to express the obvious intention of the parties, the courts will try to arrive at the intention of the parties and in accordance therewith grant or deny the relief asked for. Thus, in *Negaunee Iron Co.* v. *Iron Cliffs Co.*, 134 Mich. 264, we stated that where there is any doubt as to the meaning of an instrument, the courts will consider the situation, acts, conduct and dealings of the parties to the instrument and also as to the subject matter.

In *Willey* v. *Snyder*, 34 Mich. 60, Justice Cooley stated:

"Descriptions do not identify of themselves; they only furnish the means of identification. They give us certain marks or characteristics,—perhaps historical data or incidents,—by the aid of which we may single out the thing intended from all others; not by the description alone, but by that explained and applied. Even lands are not identified by description until we place ourselves in the position of the parties by whom the description has been prepared, and read it with the knowledge of the subject matter which they had at the time."

To like effect, see *Monfort* v. *Stevens*, 68 Mich. 61; *McConnell* v. *Rathbun*, 46 Mich. 303; *Twogood* v. *Hoyt*, 42 Mich. 609. In describing the acreage conveyed as being "off" the northwest corner of the south 55½ acres, an ambiguity at once arises. If we resolve it by following defendant Rhode's claim and hold that the metes and bounds description in

the conveyance should by construction embrace all the property between the meander line of Lake Michigan and the east section line, it would convey approximately 27½ acres instead of 20 acres, as described in the deed. If the metes and bounds description prevails, it may be claimed that the Coleman land will substantially overlap the Hutchison lands. However, we are not concerned with any conflict of title between defendants Coleman and Hutchison. If plaintiff is correct, defendants are entirely shut off from Lake Michigan on the west, as well as being landlocked on the other sides. It would border on absurdity and be not at all expressive of the intention of the parties to pay no attention to the words "20 acres off northwest corner," *et cetera,* and to follow strictly the metes and bounds description and interpret the "northwest corner of the south 55½ acres" as meaning a single dot or point from which to begin the description and thus deed a waterlocked as well as a landlocked piece of property. The entire property was of but little value in 1897 as Mrs. Whitacre had paid only $1,600 for the entire 95.5 acres in 1895. Some inference, though not a conclusive one, as to the value of the property might be drawn from the fact that the county map of 1933 shows that the 40 acres north of the Coleman tract and the 25½ acres south of the Hutchison parcel had been acquired by the Indiana Bank Sand Company in order to have a supply of sand. The westerly line of the north 40 acres, as shown on the Cleary plat, although it runs in a northeasterly and southwesterly direction, has but a very slight slant and it properly might seem to an ordinary layman or an inexperienced draftsman to run north and south and it may have been assumed that the width of 1221 feet was the same through the entire north fractional half.

"There is abundant authority for reforming a deed or mortgage which, through error, fails to express the result of the meeting of the minds of the parties, particularly when it is clear that the description fails to embody the clear, undisputed visual standard of the parties." *In re Moore's Estate,* 292 Mich. 198, 211 (7 N. C. C. A. [N. S.] 332).

Moreover, neither Mrs. Whitacre nor any of her heirs ever took possession of the property, or had it assessed in their names, or paid any taxes on it. They showed no interest in it until the heirs, as plaintiff's grantors, gave plaintiff a quitclaim deed to it. We conclude that it was the intention of Mrs. Whitacre in deeding the 20 acres to include the triangular piece marked "D" bordering on the meander line of Lake Michigan. It is conceded by the parties that the meander line of Lake Michigan is a line of description and not one of boundary and that one owning to such meander line owns to the water's edge subject to accretion and reliction unless a contrary intention is expressed in the conveyance. *Hilt* v. *Weber,* 252 Mich. 198 (71 A. L. R. 1238).

Turning now to the small triangular parcel marked "E" abutting on the meander line of Lake Michigan and west of the Hutchison parcel, it appears that it was the plain intention of the grantor to convey to the water's edge. The phrase in the deed "along lake to place of beginning" is indicative of how easily the parties could have made a mistake in judging the west line as extending due north, instead of northeast and southwest. The trial judge was correct in stating that the description wound up by saying "north 10 rods along lake to place of beginning." He held "north" did not mean northeasterly. The description nevertheless showed the intention to extend the west line along the meander line of the lake and not to leave out the very small

piece of land marked "E" on Exhibit 1. This small triangular parcel would be of little value to anyone not owning the adjoining land. The property east of that marked "Hutchison" was not covered by previous descriptions. Course and distances in descriptions in a deed yield to natural and ascertained objects like the shore of a lake. This principle, though applied to different factual situation in *Bauman* v. *Barendregt,* 251 Mich. 67, is particularly applicable to parcel "E," which we conclude belongs to defendant Hutchison.

There seems to be no serious dispute in regard to parcel "A." It is of very little value. Its omission from the original deed may have resulted from the excess of acreage Mr. Cleary found. We shall not disturb the judge's finding that title to "A" was in plaintiff. Plaintiff is also entitled to parcels "B" and "C," for while it may not have been the intention of Mrs. Whitacre and the grantees through whom defendants claim to retain these two parcels, nevertheless we are not sufficiently satisfied that it was the intention to give defendants' grantors a very large amount of property in excess of what their deeds called for. We are satisfied that neither Mrs. Whitacre nor Mr. English ever intended to retain either of the two triangular parcels, but, on the contrary, from the beginning intended to transfer them to those through whom defendants claim.

Claim was made in the trial court that plaintiff occupied a fiduciary relationship to Mrs. Rhode and took advantage of it. We have examined the record and find that plaintiff first sought an option from Mrs. Rhode. He was referred by her to her agent in Chicago, and plaintiff's further negotiations were with the agent. Plaintiff prepared an option and Mrs. Rhode signed it. Including the $100 paid for the option, it called for a consideration of

$10,710. It described the property as the 20 acres marked "Coleman" on the plat and also "including all land lying between said 20-acre tract to the meander line of Lake Michigan." The option ran until May 1, 1939. Mrs. Rhode also authorized plaintiff to bring suit at his expense to vacate an unauthorized plat of the property, and also to begin a suit in her name to obtain a decree for way of necessity so that the property could be reached from the east. After obtaining the option, plaintiff obtained a quitclaim deed dated March 30, 1939, to the entire north fractional half of section 13, *et cetera*. This would include all the parcels involved in the litigation. The deed was recorded on April 27, 1939, before the expiration of the option. Mrs. Rhode refused to renew the option. While plaintiff may have learned about the title through an abstract loaned to him by Mrs. Rhode, there was never any fiduciary relationship. The parties dealt at arms' length. The trial court correctly found there was no fiduciary relationship. He also found defendants' claim of adverse possession to be without any basis. Apparently there was no possession by any one. Plaintiff was in no way deceived. In the option prepared by himself and signed by defendant Rhode, dated November 16, 1938, plaintiff included "the  *  *  * 20 acres" and also "all land lying between said 20-acre tract and the meander line of Lake Michigan." He further agreed to accept the title of Mrs. Rhode as it then stood. In 1939, he obtained the quitclaim deeds from the Whitacre and English heirs, on the strength of which he makes his claims to the parcels in dispute.

A decree may be entered in accordance with that of the lower court quieting title in plaintiff to parcels "A," "B," and "C," but not to parcels "D" and "E," defendant Rhode being entitled to parcel

"D" and defendants Hutchison to parcel "E." As none of the parties have fully prevailed, the decree shall be without costs to any of the parties.

BOYLES, C. J., and CHANDLER, NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred with BUTZEL, J.

WIEST, J. (*dissenting*). The original 95½ acres was along Lake Michigan and extended to the waters of the lake. The meander line was no boundary. *Hilt* v. *Weber*, 252 Mich. 198 (71 A. L. R. 1238). Twenty acres were sold and described by metes and bounds, leaving a strip between such parcel and the lake. Did such strip adhere to the original 95½ acres or did it pass to the purchaser of the 20 acres? Without such lake frontage the 20-acre parcel is landlocked. The metes and bounds description was preceded by the following location of the property:

"20 acres off NW corner of S. 55½ acres being S. 55½ acres of Nfrl ½ of sec. 13, twp. 6 S., R. 20 W. 95.5 acres more or less."

This deed was executed in August, 1897, quite 46 years ago and consequently we have no contemporaneous evidence of the understanding of the parties. I am opposed to disturbing long-standing titles by technicalities based upon faulty descriptions in old deeds after contemporaneous evidence of intention of the parties thereto is unavailable. What I have said applies to all questions presented.

The bill should be dismissed, with costs to defendants.