*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLENN A. LOVEJOY and SANDRA K.
LOVEJOY,

UNPUBLISHED
January 30, 2020

Plaintiffs-Appellees,

v

No. 344957
St. Joseph Circuit Court
LC No. 15-000917-CH

SUSAN A. SNYDER,

Defendant-Appellant.

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Defendant Susan Snyder appeals by right the trial court's judgment quieting title to a 60-foot-wide strip of land in favor of plaintiffs Glenn and Sandra Lovejoy. We affirm under principles applicable to the equitable doctrine of reformation of instruments.

## I. BACKGROUND

Snyder owns a farmhouse and some surrounding real property in White Pigeon. The Lovejoys own farmland surrounding Snyder's property on its east, west, and north sides. A highway, U.S. 12, abuts the fourth side, marking the southern boundaries of the parties' properties. At issue in this case is the eastern boundary of Snyder's property. She argues that her eastern boundary is 339.09 feet to the west of the section line (Blue School Road), which is situated to the east of the parties' parcels. In support of her position, Snyder relies on her deed and the deeds of her predecessors in title, along with deeds associated with the Lovejoys's property. All of these deeds expressly set the eastern boundary of Snyder's property at "339.09 feet" from Blue School Road. The Lovejoys, on the other hand, contend that Snyder's eastern boundary is "399.09 feet" from Blue School Road, pushing Snyder's eastern boundary 60 feet to the west of Snyder's claimed line and creating the 60-foot-wide strip of land in dispute. In support of their position, the Lovejoys rely on a 1981 survey, a 2016 survey, a memorandum of land contract, a quitclaim deed terminating that land contract, the lines of occupation, and other extrinsic evidence. We note that every survey and deed description reflected that Snyder's property ran 300 feet along U.S. 12 and had a depth of 335 feet. And if Snyder's contention that

her property's eastern boundary is 339.09 feet from Blue School Road, she would have 360 feet along U.S. 12.

When the parties were unable to resolve their dispute, the Lovejoys filed this suit, alleging, in part, claims of acquiescence and adverse possession and seeking to quiet title in their favor. A bench trial was commenced. After the Lovejoys presented testimony by a surveyor and began eliciting testimony from Mr. Lovejoy, the trial was paused at the trial court's request, and there was an off-the-record conversation. Following this conversation, the trial court stopped the trial, explaining that "it's a question of law as to what a deed means, and not a question of fact as [to] what the deeds mean . . . ." Accordingly, the trial court requested that the parties submit closing briefs addressing the relevant *legal* issues. In addition to voicing agreement with the trial court, it is noteworthy that the Lovejoys agreed to dismiss their acquiescence and adverse possession claims, solely leaving for resolution their claim to quiet title, but not one based on theories of acquiescence or adverse possession.

The parties submitted their closing briefs, and 17 months later the trial court issued an oral opinion from the bench. The trial court found that the change from 399.09 feet in the surveys and quitclaim deed terminating the land contract to 339.09 feet in all of the other deeds constituted a "mistake" or "error" that "caused this issue from the beginning." Pointing out that the parties maintained their respective properties as if the eastern boundary of Snyder's land were 399.09 feet west of Blue School Road, the trial court determined that there was a mistake in the legal description. In support of that conclusion, the court noted that application of the legal description referring to 339.09 feet would result in an inaccurate fence line and a conflict with the 300-foot distance that Snyder's property has on U.S. 12. The trial court believed that Snyder's property could not extend more than 300 feet along U.S. 12. The trial court determined that the deeds containing the 339.09-foot language had to be corrected "to show . . . where [Snyder's] property actually is and . . . where the parties intended it to be." The court found that the reference to 339.09 feet was "false" and was "clearly supposed to be 399, not 339 feet." The trial court stated that Snyder had "bargained for" her property according to the lines of occupation and not the legal description contained in her deed.

The trial court subsequently entered judgment in favor of the Lovejoys. Consistent with its ruling from the bench that the legal descriptions in the deeds referencing 339.09 feet were erroneous, the court reformed the parties' deeds to reflect a distance of 399.09 feet from Blue School Road to Snyder's eastern boundary. And the trial court ordered that the judgment be recorded in the register of deeds office. A motion for reconsideration filed by Snyder was denied. This appeal ensued.

## II. ANALYSIS

On appeal, Snyder raises five specific arguments in challenging the trial court's ruling. First, Snyder contends that equity was not available to aid the Lovejoys who purchased their property knowing full well that their deed referenced 339.09 feet as part of the legal description. Next, Snyder maintains that there was no mistake of law in the legal description contained in the deeds that justified rewriting those deeds. Snyder also argues that the Lovejoys did not have standing to bring a quiet title action. Further, Snyder claims that the legal description in her deed is unambiguous and thus not subject to being rewritten on the basis of extrinsic evidence.

Finally, Snyder argues that assuming the legal description in her deed is ambiguous, the trial court erred by relying on facts not in evidence when reforming the deeds.

## A. STANDARDS OF REVIEW

Questions of law generally are reviewed de novo on appeal. *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 201; 912 NW2d 161 (2018). We also review de novo quiet title actions and rulings. *Id.* Similarly, the interpretation of a deed is subject to de novo review. *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). Furthermore, this Court reviews de novo a decision regarding the reformation of a deed. *Farabaugh v Rhode*, 305 Mich 234, 239-240; 9 NW2d 562 (1943); *Anderson v Richter*, 54 Mich App 532, 534; 221 NW2d 251 (1974). To the extent that the trial court's ruling was based on evidence presented at the abbreviated bench trial, we review for clear error findings of fact, while legal conclusions are reviewed de novo. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). To the extent in light of the procedural posture of the case that the trial court ultimately resolved the litigation in a manner consistent with the application of summary disposition principles under MCR 2.116(C)(10), our review of the court's ruling is de novo. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).[1]

## B. QUIET TITLE ACTIONS GENERALLY

Quiet title actions are governed by MCL 600.2932 and MCR 3.411. MCL 600.2932(1) provides:

---

[1] Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. A court may only consider substantively admissible evidence actually proffered by the parties. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

"In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title. If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

## C. THE EQUITABLE DOCTRINE OF REFORMATION – GOVERNING PRINCIPLES

In this case, the trial court effectively relied on the equitable doctrine of reformation. "Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). It is not open to question that a court of equity may grant relief by reforming an instrument of conveyance on the basis of mutual mistake. *Id.* at 372. The *Johnson Family* panel noted that "our Supreme Court has never limited the equitable power to reform an instrument to only those cases involving ambiguous deeds . . . [and] has specifically held that the equitable power to reform may be applied to unambiguous agreements." *Id.* In *Farabaugh*, 305 Mich at 240, the Michigan Supreme Court explained:

The general rule is that courts will follow the plain language in a deed in which there is no ambiguity. If, however, there is an ambiguity, *or if the deeds fail to express the obvious intention of the parties*, the courts will try to arrive at the intention of the parties and in accordance therewith grant or deny the relief asked for. . . . [W]e [have] stated that where there is any doubt as to the meaning of an instrument, the courts will consider the situation, acts, conduct and dealings of the parties to the instrument and also as to the subject-matter. [Citation omitted; emphasis added.]

When an instrument is drafted with the intention of carrying into execution an agreement between the parties, but which by mistake of the scrivener or draftsman does not fulfill the intention of the parties, there is a basis in equity to correct the mistake through reformation of the instrument. *Scott v Grow*, 301 Mich 226, 239-240; 3 NW2d 254 (1942). And whether a mistake was made is a subject of inquiry that allows consideration of parol evidence regardless of the language in the instrument. *Id.*

In 2 Cameron, *Michigan Real Property Law* (3d ed), Wrongs and Remedies, § 30.11, p 1784, the author observed:

The most common mistake in real estate contracts is a misdescription of the property that the parties intend to convey. The mistake might be made by a scrivener, or by one of the parties. If the property described in a land contract,

deed, or mortgage is not what both parties intended, either the vendor or the vendee may seek reformation of the instrument to reflect the true intention. In many of the misdescription cases, the parties intended the boundaries to be highly visible physical or natural objects. Thus, in granting relief, the court will often adopt a visual standard to reflect the parties' intention. [Citations omitted.]

Indeed, our Supreme Court has remarked that "[t]here is abundant authority for reforming a deed or mortgage which, through error, fails to express the result of the meeting of the minds of the parties, particularly when it is clear that the description fails to embody the clear, undisputed visual standard of the parties." *Etherington v Bailiff*, 334 Mich 543, 552; 55 NW2d 86 (1952).

"Reformation of written instruments may be had by the immediate parties and by those standing in privity with them." *Biondo v Ridgemont Ins Agency, Inc*, 104 Mich App 209, 212; 304 NW2d 534 (1981). "In its broadest sense, privity has been defined as mutual or successive relationships to the same right of property[.]" *Sloan v City of Madison Hgts*, 425 Mich 288, 295; 389 NW2d 418 (1986).

## D. DISCUSSION

At one time, Snyder's and the Lovejoys's properties comprised a single lot owned by Leo and Darlene Walters. In 1978 the Walters sold and conveyed two and a third acres via land contract to Alvin and Mariana Lammon. The memorandum of land contract indicated that the purchased property had "frontage of 300 feet on the highway and a depth of 335 feet," which are measurements found in all of the subsequent deeds and is roughly the equivalent of two and one-third acres. The limited legal description did not make any reference to either 339.09 feet or 399.09 feet. The Lovejoys contend that the property subject to the land contract is the property Snyder eventually purchased.

On August 7, 1981, two real estate transactions took place. One involved a quitclaim deed terminating the Lammons's land contract interest by conveying the interest to Robert and Sharon Milliman.[2] This quitclaim deed referenced the property's eastern boundary as being situated 399.09 feet from Blue School Road, while also indicating that the southern boundary along U.S. 12 was 300 feet in length, with a parcel depth of 335 feet. The other transaction on August 7, 1981, involved the execution of a warranty deed by the Walters that conveyed title to the Millimans of property matching exactly the legal description contained in the Lammons-to-Millimans quitclaim deed, except that the warranty deed referred to 339.09 feet instead of 399.09 feet. The legal description in the warranty deed included the same 300-by-335-foot dimensions of the lot. Both the quitclaim and warranty deeds were drafted "*under direction of Alvin D. Lammon.*" (Emphasis added.) A survey that was completed just two days earlier, August 5,

---

[2] Under the land contract, the Lammons held equitable title, while the Walters retained legal title. See *Graves v American Acceptance Mtg Corp*, 469 Mich 608, 614; 677 NW2d 829 (2004) ("This Court has consistently held that under a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered.").

1981, indicated that the eastern boundary of the property being conveyed to the Millimans was a distance of 399.09 feet from Blue School Road.

It is quite evident that the 339.09-foot measurement figure contained in the Walters-to-Millimans warranty deed constituted a drafting mistake or scrivener's error that did not reflect the true intentions of the parties to that deed. The distance of 339.09 feet to Blue School Road was inconsistent with the Lammons-to-Millimans quitclaim deed, was inconsistent with the survey, was inconsistent with the lines of occupation, was inconsistent with fence lines, and was inconsistent with the 300' x 335' dimensions contained in the very deed referencing 339.09 feet. From then on, all of the subsequent deeds contained and continued the same error in their legal descriptions. Nonetheless, there is absolutely no logical basis to conclude that the indicated 339.09-foot measurement was accurate or reflected the intention of the parties, especially considering that Mr. Lammon directed the drafting of both of the August 7, 1981 deeds.

As discussed earlier, the equitable power to reform a deed on the basis of error or mistake exists even if a deed is unambiguous, *Farabaugh*, 305 Mich at 240; *Johnson Family*, 281 Mich App at 372, and parol and other extrinsic evidence can be considered in determining whether there was a mistake and whether the deed reflected the intention of the parties, *Farabaugh*, 305 Mich at 240; *Scott*, 301 Mich at 239-240. Furthermore, even were an ambiguity required, there was an internal inconsistency and thus an ambiguity with respect to the Walters-to-Millimans warranty deed because if the distance between Blue School Road and the eastern boundary of the property acquired by the Millimans was 339.09 feet, the Millimans would have had 360 feet on U.S. 12 instead of the 300 feet stated in the deed. In the context of a bench trial, the trial court's finding that there was a mistake or an error in the Walters-to-Millimans warranty deed and future deeds was not clearly erroneous. And in the context of a motion for summary disposition under MCR 2.116(C)(10), there was no genuine issue of material fact that a mistake was made in the drafting of the Walters-to-Millimans warranty deed. Furthermore, because there was privity between the Walters and the future owners of their property and between the Millimans and the subsequent owners of their parcel, i.e., "successive relationships to the same right of property," *Sloan*, 425 Mich at 295, reformation of the parties' deeds was appropriate, *Biondo*, 104 Mich App at 212.

Snyder's arguments that the deeds were unambiguous and that extrinsic evidence could not be considered fail for the reasons discussed above. Snyder also argues that equity cannot be used to aid the Lovejoys in view of the fact that when they purchased their property from the trustee of the trust established by the Walters, they knew of the discrepancy yet proceeded with the transaction. Snyder essentially raises the clean hands doctrine. This doctrine closes the doors of a court of equity to a plaintiff tainted with inequity or bad faith with respect to the matter in which he or she seeks relief, regardless of however improper the behavior of the defendant. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). The "doctrine is rooted in the historical concept of the court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith." *Id*. (citation and quotation marks omitted).

The Lovejoys had leased the property for 10 years before purchasing the farmland in 2009. He testified that he had farmed the property up to the fence lines during those years and that there had never been any ownership dispute in that timeframe over the 60-foot strip, nor had

Snyder or her predecessors ever occupied the strip. Therefore, although they became aware of the issue just before the closing and understood that the trustee was not going to make any change to the legal description, the Lovejoys proceeded with the sale with the mindset that there would be no problems. Although their decision to proceed might be deemed naïve or unwise, we cannot conclude that it would be inequitable or unfair under these circumstances to deny the Lovejoys the aid of equity. And they certainly did not act in bad faith.

Finally, there is no merit to Snyder's contention that the Lovejoys lacked standing to bring a quiet title action. As quoted earlier, MCL 600.2932(1) provides:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

The Lovejoys plainly had standing to bring a quiet title action with respect to the dispute over the eastern boundary of Snyder's property and the 60-foot-wide strip of land.

### III. CONCLUSION

Under the facts of this case, the trial court properly reformed the parties' deeds pursuant to the equitable doctrine of reformation of instruments. Snyder's arguments to the contrary are unavailing.[3]

We affirm. Having fully prevailed on appeal, the Lovejoys may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

---

[3] Although the Lovejoys did not specifically allude to "mistake," "scrivener's error," or "reformation" in their complaint, they did set forth the history of the deeds and surveys and spoke to the confusion that arose. Additionally, in their "quiet title" count, the Lovejoys did request that the court remove the cloud on their title and grant such relief "as shall be agreeable to equity and good conscience." We conclude that this sufficed to allow the trial court to resolve the case on the basis of the equitable doctrine of reformation. See MCR 2.111(B).